FILED
SUPERIOR COURT
OF GUAM

2022 MAY -6 PM 3: 00

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| RICHARD E. MOYLAN, | **Superior Court Case No. CV0760-16** |
| Plaintiff/Counterclaim Defendants, | |
| vs. | **DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| AXE MURDERER TOURS, INC., ET AL., | |
| Defendants/Counter-claimants. | |
| | |
| AND RELATED COUNTERCLAIMS AND THIRD-PARTY CLAIMS. | |

The Court here considers whether Plaintiff Richard Moylan has exclusive possessory rights to Lot No. 1051, Hagatna, based on a Lease to which he is not a party. Having reviewed the parties' arguments, the Court determines that Richard has not established that the Lease granted him such rights as a matter of law and therefore DENIES his Motion for Partial Summary Judgment.

## I. PROCEDURAL BACKGROUND

On August 2, 2017, Richard moved for partial summary judgment and sought a ruling that he was entitled to exclusive possession of Lot No. 1051 under a lease executed by his tenants-in-common. Consideration of the motion, the briefing on which was completed in September 2018,[1] was stayed until after the issuance of *Moylan v. Axe Murderer Tours Guam, Inc.*, 2021 Guam 25. Following the Guam Supreme Court's Mandate and remand, this Court heard the motion on March 11, 2022.

---

[1] For a fuller discussion of events during this time period, see the Court's February 2, 2022 Order Denying Motion to Strike Notice of Supplemental Authority.



## II.    UNDISPUTED FACTS

The Court incorporates Numbers 1 through 7 of the Undisputed Facts in its December 13, 2018 Decision and Order re Motion to Dismiss Counterclaims and Third Party Claims.

The Court further finds as undisputed facts the contents of the Lease at issue, including:

- The recitals of the Lease indicate that the Lessees desire to lease their respective interests in 14 parcels of property owned by different members of the Moylan family. Decl. Counsel, Ex. A (Aug. 2, 2017).

- The Lease acknowledges Richard's interest in one lot:

  Consent to Occupy Lot 1051. Lessees acknowledge that Richard E. Moylan is tenant in common with Lessors as to Lot No. 1051 of said premises. It is the intention of Lessors to lease all of their undivided right, title and interest in said lot. However, it is understood that the permission of Richard E. Moylan is necessary before the said lot can be used by Lessees. It shall be the sole responsibility of Lessees to obtain permission from Richard E. Moylan to occupy Lot No. 1051.

Decl. Counsel, Ex. A at § 2.

- Lessors charged the Lessees rent, with the first payment due the month the Lease was executed. Decl. Counsel, Ex. A at § 4.

- Lessors agreed to pay taxes, utilities, and insurance, and for repairs and improvements. Decl. Counsel, Ex. A at §§ 8, 9, 10, 13.

## III.   LAW AND DISCUSSION

Under Guam Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is proper only where there is no genuine "dispute as to any material fact." GRCP 56(c). The "materiality" of particular facts is determined by the pleadings and the substantive law. *Anderson v. Liberty*



*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, the Court must view the evidence and draw inferences in the light most favorable to the non-movant. *Edwards v. Pacific Fin. Corp.*, 2000 Guam 27 ¶ 7.

The sole question raised by Richard's motion is whether it is undisputed that the Lease, under its section 2, grants him an exclusive right to possess Lot No. 1051. A lease is a "contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent." LEASE, Black's Law Dictionary (11th ed. 2019). In interpreting a lease and the parties' intent, the Court looks to the document's plain language. 18 GCA § 87105 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"); *Wasson v. Berg*, 2007 Guam 16 ¶ 16; *Duenas v. George and Matilda Kallingal, P.C.*, 2012 Guam 4 ¶ 13 (same, analyzing a lease). Although Richard confines his examination to section 2, "Consent to Occupy Lot 1051," the Court must also look within the full four corners of the contract document. *Wasson*, 2007 Guam 16 ¶ 16.

The Court first focuses on the terms of the Lease that address Lot No. 1051. The Lease acknowledges that the Lessors held a joint interest in Lot No. 1051 with Richard as tenants-in-common. Under a tenancy-in-common, each cotenant is entitled to equal right to possess the whole property. *See Most v. Passman*, 70 P.2d 271, 272 (Cal. 1937). Because each cotenant's right is held independently of the other cotenants, any cotenant may, by lease, confer his right to occupy and use it as fully as he might himself. *Id.*

Here, the Lease conveyed the Lessors' joint interest in Lot No. 1051 with Richard as tenants-in-common, including the right to possess the whole property. Section 2 limited the Lessees' exercise of these rights in that they had to obtain Richard's consent before making use of Lot No. 1051.



Richard believes the Lease imposed a further limitation--that Lessess could not possess the property without his permission, thereby giving him exclusive possession. However, Richard's interpretation exceeds the plain language interpretation of the Lease. While section 2 does require that the Lessees acquire Richard's consent before using the property, it does not state that the Lessors forfeit their rights of possession to Richard absent this consent. Instead, the section articulates a reservation of rights: "It is the *intention* of Lessors to lease all of their undivided right, title and interest in said lot." Decl. Counsel, Ex. A § 2 (emphasis added). Moreover, the Lease does not state that Richard, who was not a party to the Lease, shall be the only cotenant entitled to exclusive possession. Absent such language, the Lease does not subordinate the rights retained by the Lessors relative to Richard or expand Richard's rights relative to his co-tenants or their lessees.

The Court also notes that the context of many of the other Lease provisions strengthens the rights of the Lessees as opposed to giving any rights to Richard. Sections 8, 9, 10, and 13 obligate the Lessees to pay taxes, utilities, maintenance, and insurance. The Lessees' acquisition of these obligations runs contrary to Richard's interpretation that the Lease gives him full power to possess the property. The same applies to the obligation to pay rent immediately; if the Lease granted Richard exclusive possession of Lot 1051, it seems absurd that the Lessees would agree to pay rent on that lot.

The Court does not find that any of the authority cited by Richard alters its interpretation. Richard cites *Duenas* in support of his proposition that section 2's title, "Consent to Occupy Lot 1051," gave him the right to exclusive possession. 2012 Guam 4. In *Duenas*, the Guam Supreme Court looked at several factors, including a document's title of "assignment," in its interpretation that the document was an assignment. *Id.* ¶ 14. However, looking at this title plainly, the Court again finds that it does not specifically grant any rights to Richard. Instead, it



is consistent with the entirety of that section which directs the lessees to acquire Richard's consent to use or occupy the lot.

Richard also cites *Stanley v. Cox*, which involved a dispute over the scope and enforceability of a couple's divorce agreement. 117 S.E.2d 826, (N.C. 1961). Richard argues that *Stanley* supports the proposition that "an agreement between tenants in common giving one tenant in common the right to exclusive use or possession of all or part of the property so held is enforceable." Mem. Supporting Mot. Partial Summ. J. at 6 (Aug. 2, 2017). Unlike the husband or wife who made certain contractual promises in *Stanley*, no promises were made by Richard, nor were promises made by either the Lessors or Lessees towards Richard. Accordingly, on its face, this case has little relevance to the dispute before the Court and the central question of what rights Richard received by virtue of a lease agreement between contracting parties.

Next, Richard cites *Smith v. Watson*, which addresses the scope of express assignments between two separate parties who each obtained a share of property from a common owner. 322 S.E.2d 588 (N.C. Ct. App. 1984). Richard points to the language in *Smith* stating that an "agreement between tenants in common giving one tenant in common the right to exclusive use or possession of all or part of the property so held is 'valid and enforceable, and binding on them, their heirs, personal representatives, and assigns with notice.'" *Id.* at 592. Despite this language, the decision in *Smith* ultimately rests on the issue of which party recorded its deed first--which again makes *Smith's* applicability questionable. Even so, *Smith*, like *Stanley*, concerns parties in privity and the rights transferred from one party to another contracting party.

Finally, Richard cites *Phaire v. James* for the proposition that a "tenant in common may limit the possessory rights of the lessee who that co-tenant is transferring his possessory rights to." 1985 WL 1177604 (V.I. 1985); Memo. Supporting Mot. Partial Summ. J. at 8. Richard seems to imply that *Phaire* indicates that he, as a co-tenant, can limit the rights of the lessee of

his co-tenant. However, *Phaire* does not make that proposition at all. Instead, it follows the standard property law principles that one co-tenant "may grant to other persons freely, and without the necessity of consent from his co-tenant, his interest in the property and whatever rights he enjoys." 1985 WL 1177604 at *1. In fact, *Phaire* recognized that a co-tenant cannot oust another co-tenant's lessee and take sole possession of the property. *Id.*

As a final note, the Court declines to review materials extrinsic to the Lease to interpret its terms, such as a 2017 Lease Clarification and License signed by two of the five lessors. The Court determines that the Lease's language is unambiguous in granting Richard no right of exclusive possession.

## IV.    **CONCLUSION AND ORDER**

The Court finds that Richard has not established as a matter of law that the Lease grants him exclusive possession of Lot 1051. His motion for summary judgment on this issue is therefore DENIED.

SO ORDERED this 6th day of May 2022.

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**


Appearing Attorneys:
Douglas B. Moylan, Esq., Law Offices of Douglas B. Moylan, for Plaintiff/Counter-Defendant Richard E. Moylan
Gary W.F. Gumataotao, Esq., Law Offices of Gumataotao & Pole, P.C., for Plaintiff/Counter-Defendant Richard E. Moylan and Third-Party Defendant Douglas B. Moylan
Curtis C. Van de Veld, Esq., The Vandeveld Law Offices, P.C., for Plaintiff/Counter-Defendant Richard E. Moylan and Third-Party Defendant Douglas B. Moylan.
Jeffrey Cook, Esq., Law Offices of Cunliffe & Cook, for Defendant Axe Murderer Tours Guam/Beach House
Mitchell Thompson, Esq., Thompson Thompson & Alcantara, P.C., for Defendant/Counterclaimant/Third-Party Plaintiff E.C. Development, LLP, and Defendant Paseo View Properties, Inc.

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

D. Moylan, Curtis
Cunliffe

Date: _____ Time: 5/2/22

Joseph Bamba, Jr.
_____
Deputy Clerk, Superior Court of Guam

VIA E-MAIL
knowledge that an electronic
copy of the original was e-mailed to:

GU MACTO, D
Thompson

Date: _____ Time: 5/4/22

Joseph Bamba, Jr.
_____
Deputy Clerk, Superior Court of Guam